

FILED

2022 Jun-29 AM 08:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| Charleston Apartments of Mobile, L.L.C. (plaintiff); | ) ) ) ) |
| v. | ) ) |
| Edward K. Sexton, Jr.(defendant); Gentle, Turner & Benson, L.L.P. defendant); Erik Hoaglund defendant); McCallum, Hoaglund & Irby, L.L.P. (defendant);John Doe(defendant). | ) ) ) ) ) ) |

## COMPLAINT

COMES now the plaintiff, Charleston Apartments of Mobile, LLC. and files its complaint against the named defendants and states as follows:

## PARTIES

1.    The plaintiff, Charleston Apartments of Mobile, LLC, is a Mississippi Limited Liability Company licensed to do business in Alabama.

2.    The defendant, Edward K. Sexton Jr. ('Sexton'), is an attorney and resident of the state of Alabama, who was a partner of the law firm Gentle, Turner, Sexton, Harbison, LLP. with his principal place of practice now in Jefferson County, Alabama.

3.    The defendant, Gentle Turner & Benson, LLC., is an Alabama Limited Liability Corporation with its principal place of business in Shelby County, Alabama, and the successor in interest to Gentle, Turner, Sexton, Harbison, LLP., a Liability Partnership, LLP.

1

4.     The defendant, John Doe, is an unknown entity that Sexton may have become associated with following the termination of Sexton's partnership with Gentle, Turner, Sexton, Harbison, LLP.

5.     Defendant, Erik Hoaglund ('Hoaglund'), is an attorney and resident of the state of Alabama, with his principal place of practice in Birmingham, Alabama.

6.     The defendant McCallum, Hoaglund & Irby, LLP., is an Alabama Limited Liability Corporation with its principal place of business in Vestavia, Alabama.

7.     Unless otherwise specified herein, the defendants are collectively referred to as "the defendants."

### JURISDICTION AND VENUE

8.     This court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332, and the venue in this Honorable Court is proper pursuant to 28 U.S.C. § 1391. Specifically, the requirements for complete diversity jurisdiction exist because: (1) the plaintiff is incorporated in the State of Mississippi; (2) the Defendants are incorporated, and citizens of the State of Alabama; and (3) the amount in controversy is $75,000.

### THE UNDERLYING FACTS

9.     In 2011, the underlying defendant', Heritage Construction Company, Inc., was hired by the plaintiff as the general contractor for apartment construction and development.

10.    The underlying defendants, Pucciano & English, Inc. and Pucciano & Associates, P.C., acted in a supervisory capacity to ensure that the

2

labor and materials provided were done or supplied per the contracts and specifications.

11.   The underlying defendant, Ellison Plumbing & Piping, Inc., provided the work, labor, and materials necessary to complete the plumbing system for the apartments. The plaintiff's contract with Ellison required that the piping would be supplied and manufactured by Viega.

12.   Unless specifically referred to otherwise, Pucciano & English, Inc. and Pucciano & Associates, P.C., Ellison Plumbing & Piping, Inc. are collectively referred to as "the underlying defendants."

13.   The underlying action involved allegations of construction defects caused by improper NIBCO PEX ("NIBCO") piping and fittings being used rather than Viega piping and fittings.

14.   The construction project was substantially completed by February 12, 2011, and a Certificate of Occupancy was issued on March 25, 2011.

15.   Following completion of construction, the property was turned over to the plaintiff to begin marketing and leasing apartments to tenants.

16.   Over the next several years, the plaintiff was notified that leaks were occurring and damaging the premises and the tenant's personal property.

17.   The underlying defendant Ellison made numerous repairs under its contractual warranty agreement.

18.   In addition to Ellison, the plaintiff used its on-site maintenance team to repair/replace the plumbing and to repair damaged tenant property.

19.   The plaintiff has had to relocate tenants frequently due to the plumbing problems and continues to do so.

20.   On or about September of 2018, the plaintiff, through its agent Kevin Hodges, discovered that Ellison had used defective NIBCO piping and fittings in the construction of Charleston Apartments in violation of the contract specifying Viega piping.

21.   In the underlying action, the plaintiff alleged that the underlying defendants had successfully concealed its use of the NIBCO products from the plaintiff.

### LEGAL MALPRACTICE FACTS

22.   On or about October 2, 2018, the plaintiff executed an engagement contract with the defendants to represent the plaintiff in:

> "in connection with Client's claims against any and all persons or entities, which may be liable for damages related in any way to the construction of Charleston Apartments of Mobile, L.L.C., or any materials used or specified to be used in the construction of Charleston Apartments of Mobile, L.L.C. or any materials used or specified to be used in the construction."

23.   Kevin Hodges ('Hodges'), Vice President of Operations for Heritage Properties, Inc., which manages Charleston Apartments of Mobile, LLC, first knew defendant Sexton through social contacts.

24.   By and through his former employment, Hodges had previously used Sexton regarding Chinese Dry Wall Litigation and Hodges was pleased with the results.

25.   Due to this history Hodges knew Sexton was experienced in construction litigation and contacted Sexton for his advice and opinion regarding the merits of action against the contractors,

suppliers, and the manufacturer of the defective construction and materials.

26.   In September of 2018, Hodges met with Sexton and Hoaglund.

27.   Following this meeting, Sexton and Houglund traveled to Mobile and physically inspected the premises for defective construction.

28.   Following the physical inspection, Sexton and Houglund agreed to represent the plaintiff against the underlying defendants; the engagement contract was executed on October 2, 2018. The plaintiff understood this representation to include filing a claim or joining in the class action against NIBCO PEX.

29.   Following the execution of the engagement contract, the plaintiff did not hear from the defendants for several months.

30.   The plaintiff periodically contacted Sexton to follow up on the litigation status.

31.   In March of 2019, Hodges contacted Sexton to inquire about the litigation status. Sexton responded that everything was proceeding full speed ahead.

32.   In September of 2019, Hodges contacted Sexton to inquire about the litigation status and asked if "we are still moving forward with this." Sexton responded "yes," and Sexton again assured Hodges that his firm was continuing to handle the matter.

33.   On June 29, 2020, Hodges wrote to Sexton inquiring about the litigation status. In this email, Hodges brought it to Sexton's attention that there were numerous lawsuits and a class action against NIBCO PEX.

34.   On June 29, 2019, Sexton wrote Hodges:

Kevin - as we discussed - the plumber would have received
the class action settlement notice - this is the primary
case that was settled and provided nominal benefits-
The other claims against NIBCO that are pending lawsuits
were cases specifically excluded in the settlement
documents- I did a search and could not find any other
class actions that would deal with the claims settled in
the one mentioned above- and if there were any other later
filed actions they would likely be barred.
While we do not have our expert report back from the
contractor we can go forward with claims against the
plumber. From my reading of the class settlement- while
your company as the owner of the property wouldn't have a
direct action against NIBCO the plumber may have a claim
against NIBCO and may try to add them in as a 3rd part
defendant- basically saying if the plumber is liable then
NIBCO is liable to him.
My records reflect we didn't inspect the property until The
end of August - we would need to file a lawsuit before that
date as Alabama requires it to be filed within 2 years from
the date it reasonably was discovered that you had a claim.
I'd like to send you a draft by July 15 so we could get it
filed in the month of July. The plumber could argue that
the defects were known prior to the time when we actually
inspected it and shouldn't be allowed- but it's my
understanding that he had made repairs and never disclosed
that he did not use the plumbing pex specified in the
contract- basically covering up his breach- that fraud
would likely obviate any claim the plumber may make if he
contends that you should have known of his fraud and breach
earlier. I'm not sure what coverage the plumber had - but
the contract I think required him to have 2 million in
coverage- please let me know if you need anything else or
if the owners want to talk to me- I'll be glad to answer
any questions they have. I'll get a draft to you by the
15th- so we can have it refined before filing. Can you give
me some indication about problems that happened since we
were there- and if your crew did the work-or if the plumber
has been back out. Thank you and if you have questions let
me know.

35.  June 29, 2020, is the first time the plaintiff learned that a
lawsuit had not been filed.

36.   In this email, Sexton misrepresented that Alabama law provided
the plaintiff a 2-year statute of limitations starting from the date
Sexton and Houglund inspected the property. Sexton's assertion is
misrepresentation of Alabama law regarding the accrual of a cause of
action.

37.   In this email, Sexton misrepresented that the plaintiff would not
have had a direct cause of action against NIBCO, and such a claim
would have had to be brought to the plumber.

38.   Contrary to Sexton's misrepresentation, the NIBCO settlement
included the owners of residential and commercial property, and the
plaintiffs would "…includes all Persons who subsequently purchase or
otherwise obtain an interest in a property covered by this Settlement
without the need of a formal assignment by contract or court order."

39.   The class action covered any residential and commercial entity
that had been damaged by NIBCO for the period from January 1, 2005,
through May 16, 2019.

40.   A valid claim, which the plaintiff contends it had, covered 25-
70% of the reasonably proven past and future property damage.

41.   Given the damage caused by the defective NIBCO piping and
fittings, Charleston Apartments was in a position to recover a
substantial sum from the NIBCO class action settlement.  This sum
would have conservatively been at least several hundred thousand
dollars and potentially up to several million.

42.   On August 21, 2020, almost two years after executing the
engagement contract, the defendants filed a complaint against the
underlying defendants in the Circuit of Mobile, Case # CV-2020-901796.

7

43.   In the underlying action, the plaintiff alleged against the applicable defendants (1) negligent and willful and wanton construction; (2) negligent and willful and wanton selection, inspection, supply, or installation of materials; (3) negligent hiring and supervision; (4) breach of contract; (5) Breach of Warranties (6) Fraud; and (7) fraudulent suppression of material facts.

44.   The defendants never asserted a claim in the class action lawsuit against NIBCO.

45.   The underlying defendants raised the statute of limitation as to their primary defense.

46.   On April 7, 2021, Pucciano & Associates, Inc., and Pucciano & English, Inc., moved for summary judgment on the argument that the applicable statute of limitations barred the plaintiffs' claims.

47.   The plaintiffs did not file a response to this motion for summary judgment.

48.   On June 4, 2021, the underlying defendants Pucciano & Associates, P.C. and Pucciano & English, Inc., were dismissed by joint stipulation on a pro-tanto basis.

49.   On September 8, 2021, the underlying defendant, Ellison Plumbing and Pipes, Inc, moved for summary judgment on the arguments that the applicable statute of limitations barred the plaintiffs' claims.

50.   On October 4, 2021, the underlying defendant Heritage Construction, Inc., was dismissed by joint stipulation on a pro tanto basis.

51.   After several continuances requested by counsel for the plaintiff, Ellison's motion for Summary Judgment was set to be heard on December 3, 2021.

52.   On December 2, 2021, counsel for the plaintiff filed an untimely and defective Opposition Brief pursuant to Rule 56, Ala. R. Civ. P. to Ellison's Motion for Summary Judgement.

53.   The Opposition Brief was untimely as it was filed less than two days before the hearing in violation of Rule 56, Ala. R. Civ. P.

54.   The Opposition Brief was defective as it contained no admissible evidence in its opposition as required by Rule 56, Ala. R. Civ. P. Although the brief stated it contained an affidavit from Kevin Hodges, the only document in opposition was an unverified construction floor plan of the original construction drawings.

55.   On February 2, 2022, Ellison moved to enter an order granting the defendant summary judgment because the Opposition Brief was untimely and defective.

56.   Due to these defects, Ellison's Motion for Summary Judgment was unopposed.

57.   On February 2, 2022, the court entered an order granting Ellison's Motion for Summary Judgment.

58.   The plaintiffs did not file for an appeal.

## COUNT I
## LEGAL MALPRACTICE

59.   The plaintiff incorporates the aforementioned paragraphs as if fully set out herein.

60.   The defendants' representation to the plaintiff fell below the applicable standard of care of similarly situated legal service providers by failing timely research, preparing, and filing the plaintiff's claims until almost two years after the plaintiff engaged the defendants for legal services.

61.   The defendants' representation fell below the applicable standard of care by forming an opinion, and then apparently relying on this opinion, that the statute of limitations against the underlying defendants began running two years from the date the defendants physically inspected the property

62.   The defendants' representation fell below the applicable standard of care of a similarly situated legal services provider by failing to research, prepare and join in the class action claim against NIBCO.

63.   The defendants' representation fell below the applicable standard of care of a similarly situated legal service provider by failing to file a timely and sufficient Opposition Brief to Ellison's Motion for Summary Judgment.

WHEREFORE, premise stated and considered, the plaintiff prays that this Honorable Court award a judgment against the defendants for compensatory and punitive damages and other relief as this Honorable Court sees fit to award.

## COUNT II
## FRAUD

64.   The plaintiff incorporates the aforementioned paragraphs as if fully set out herein.

65.   Following the execution of October 2, 2018, engagement contract with the defendants, the defendants misrepresented that they were

10

actively pursuing, and having timely filed a claim, the claims against the underlying defendants and NIBCO.

66.   The plaintiff justifiably relied on the defendants' statements by not seeking to engage other legal counsel to pursue the claims against the underlying defendants and by not filing a claim in the NIBCO class action settlement.

67.   On June 29, 2022, the plaintiff learned that the defendants had not been actively pursuing claims against the underlying defendants when the plaintiff learned an action had not been filed.

68.   On June 29, 2022, the plaintiff first learned that the plaintiffs had not pursued a claim in the NIBCO class action.

69.   But for the defendants' fraudulent misrepresentations that the case was being actively pursued, the defendants' claims against the underlying defendants were not filed until almost two years after the defendants were engaged to provide legal representation.

70.   But for the defendants' fraudulent misrepresentations that the plaintiff lacked standing to join in the class against NIBCO, the defendants did not file a timely claim in the class action lawsuit.

WHEREFORE, premise stated and considered, the plaintiff prays that this Honorable Court award a judgment against the defendants for compensatory and punitive damages and other relief as this Honorable Court sees fit to award.

Respectfully Submitted,

Slate McDorman [MCD070]
Attorney for the
Plaintiff

11

**Of Counsel:**

Slate McDorman
2 Office Park Circle
Ste. 3
Birmingham, Al 35223

Tel: 205-983-4380

Slate@McDorman.com